UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GALHEN MELCHIZEDEK a.k.a John Thomas Entler,<br><br>Petitioner(s),<br>v.<br><br>DANIEL D ALLEN,<br><br>Respondent(s). | CASE NO. C25-1124-KKE-SKV<br><br>ORDER DECLINING TO ADOPT REPORT AND RECOMMENDATION AND GRANTING PETITION FOR A WRIT OF HABEAS CORPUS |

This matter comes before the Court on the Report and Recommendation ("R&R") of U.S. Magistrate Judge S. Kate Vaughn, recommending dismissal with prejudice of Petitioner Galhen Melchizedek's petition for a writ of habeas corpus. Melchizedek contends that, while imprisoned in a state correctional facility, prison officials violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by disciplining him for declining a work assignment that would have required him to violate his religious beliefs. A state appellate court considered, and rejected, Melchizedek's claim.

Because the Court concludes that his claim is cognizable in federal habeas; that his disciplinary sanctions violated RLUIPA; and that, in concluding otherwise, the state court unreasonably applied clearly established federal law as interpreted by the United States Supreme Court, the Court will decline to adopt the R&R and grant Melchizedek's habeas petition.

## I. BACKGROUND

Melchizedek is an inmate at the Monroe Correctional Complex ("MCC") and claims to be a "Messianic Essene," which he describes as a religious sect of Jewish descent that possessed the Dead Sea Scrolls. Dkt. No. 13-1 at 19, 30–35. According to Melchizedek, Essenes were one of three sects in Jerusalem at the time of "Yashua's"—or Jesus's—"birth and … crucifixion." *Id.* at 34. Melchizedek is the director of The Essene Assembly of Yahvah, a Washington nonprofit corporation, and claims to "have been ordained as a priest" in the group. *Id.* at 20, 25–26. He was once named John Thomas Entler but, after converting to being an Essene, adopted the "new name" Galhen Melchizedek, which he believes was "given to [him] by Yahvah (God)[.]" *Id.* at 20, 29, 33.

As an Essene, Melchizedek adheres to certain edicts set forth in a text from the Dead Sea Scrolls known as the "Community Rule." Dkt. No. 13-1 at 21, 37–40. Among these is a requirement that Melchizedek separate himself from non-Essenes in regard to his work, which Melchizedek interprets as prohibiting him from "working for a governmental entity such as the Washington State Department of Corrections" ("DOC"). *Id.* at 21–22.

DOC policy, however, prohibits unemployed inmates from refusing a work assignment when one is offered and subjects inmates who do so to discipline. Dkt. No. 13-1 at 311. Under DOC regulations, refusing to participate in available work (or training, education, or other mandatory programming assignment) constitutes a "serious violation" triggering disciplinary procedures. WASH. ADMIN. CODE §§ 137-25-030(557), 137-28-270. This is consistent with state law declaring the legislature's intent "that all incarcerated individuals be required to participate in [DOC]-approved education programs, work programs, or both, unless" exempted for medical reasons. WASH. REV. CODE § 72.09.460(2), (10).

In February 2023, a correctional unit supervisor in the prison informed Melchizedek that he was next on the waiting list for an open groundskeeper position. Dkt. No. 13-1 at 301. Prior to this time, Melchizedek had not worked for a DOC work program for nearly seventeen years. *Id.* at 16, 662. Melchizedek refused to accept the position, stating that he would not work for DOC due to his religious beliefs. *Id.* at 302. In June 2023, when a groundskeeper position again became available, Melchizedek again refused to accept it. *Id.* at 303.

On both occasions, DOC issued Melchizedek an infraction report and held a prison disciplinary hearing. Dkt. No. 13-1 at 188–89. At each hearing, Melchizedek submitted a memorandum arguing that disciplining him for refusing to accept the work assignments violated RLUIPA by substantially burdening his religious exercise without adequate cause. *Id.* at 209–19, 248–58. He pleaded guilty to the infractions but asked that his religious beliefs be accommodated by exempting him from the work requirement. *Id.* at 201–02, 210, 244–45. For the first infraction, DOC imposed sanctions of 15 days' loss of good conduct time, 30 days' loss of privileges (access to the dayroom, gym, and yard), 2 months' loss of monthly packages, and loss of earned release time for February 2023. *Id.* at 201, 204–05. For the second, it imposed 30 days' loss of good conduct time, 90 days' loss of dayroom privileges, 4 months' loss of monthly packages, and loss of earned release time for June 2023. *Id.* at 244. Melchizedek appealed the first infraction, and DOC affirmed. *Id.* at 227–28.

In March 2023, following his unsuccessful appeal, Melchizedek filed a personal restraint petition with the Washington Court of Appeals, Division II. Dkt. No. 13-1 at 2–79. Melchizedek asked the state court to restore his lost good conduct time and earned release time and enjoin DOC from burdening his religious exercise by requiring him to work for a government, arguing, as relevant here, that his disciplinary sanctions violated his rights under RLUIPA. *Id.* at 60.

The Court of Appeals issued an unpublished opinion dismissing the petition. Dkt. No. 13-1 at 353–63. It found that Melchizedek's objection to accepting the work assignment was grounded in a sincerely held religious belief and that DOC's issuance of an infraction and sanctions substantially burdened his religious exercise. *Id.* at 357–58. But the court found that the State nonetheless carried its burden of showing that the disciplinary actions were the least restrictive means of furthering a compelling governmental interest in "prison security" and "effective prison administration." *Id.* at 358–60. In particular, the court held that exempting Melchizedek from the mandatory work requirement would violate the "neutrality principle" required by the First Amendment's Free Exercise and Establishment Clauses; "could jeopardize the effective functioning of the prison and its operations dependent on inmate labor"; "could further defeat the legislature's intent and purpose in creating the inmate work program"; and could "promot[e] idleness among inmates" thus "threatening the order and safety of the prison[.]" *Id.* at 361–62.

Petitioner moved for discretionary review with the Washington Supreme Court, which, after briefing, denied review without comment. Dkt. No. 13-1 at 784. The Court of Appeals then issued a certificate of finality on April 30, 2025. *Id.* at 786.

Melchizedek filed this habeas petition pursuant to 28 U.S.C. § 2254, naming DOC's Associate Superintendent[1] and seeking federal review of his RLUIPA claim. Dkt. No. 6. That petition has been fully briefed (Dkt. Nos. 12, 15, 18), and Judge Vaughn issued an R&R (Dkt. No. 20). The R&R recommends that the petition be dismissed with prejudice because Melchizedek's RLUIPA claim is not cognizable in habeas under the test from *Hill v. United States*, 368 U.S. 424

[1] Because Respondent Daniel D. Allen is sued in his official capacity, the Court refers to him as simply "the State."

(1962). Dkt. No. 20 at 9. Melchizedek filed objections to the R&R (Dkt. No. 21), to which the State did not respond.[2]

## II. ANALYSIS

Melchizedek brings this action under 28 U.S.C. § 2254, which authorizes federal courts to hear habeas petitions by individuals "in custody pursuant to the judgment of a State court" where the petitioner claims to be "in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2254(a). Because a state court previously adjudicated his claim on the merits, this Court's "review is limited to the record that was before the state court[.]" *Dow v. Virga*, 729 F.3d 1041, 1043 (9th Cir. 2013).

The Court begins by considering the R&R's recommendation that Melchizedek's RLUIPA claim is not cognizable in federal habeas. Finding that his claim is properly brought in habeas, the Court then considers whether the Washington Court of Appeals unreasonably applied federal law as interpreted by the United States Supreme Court in dismissing his personal restraint petition. *See* 28 U.S.C. § 2254(d).

### A. Melchizedek's Claims are Cognizable in Habeas.

While habeas relief extends to both federal constitutional and nonconstitutional claims, not every asserted violation of federal law can be raised in a habeas petition. *Davis v. United States*, 417 U.S. 333, 346 (1974). Rather, federal habeas review is available only to check violations of federal law that qualify as "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *Hill*, 368 U.S. at 428. In evaluating whether a habeas claim meets this standard, courts consider

[2] Melchizedek also filed an amended habeas petition (Dkt. No. 22), which the Court has not considered because it is untimely and Melchizedek has obtained neither written consent from the State nor the Court's leave to amend his petition. *See* FED. R. CIV. P. 15(a)(1)–(2).

"whether the error 'present[s] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" *Lord v. Lambert*, 347 F.3d 1091, 1094 (9th Cir. 2003) (alteration in original) (quoting *Hill*, 368 U.S. at 428).

The State contends (and the R&R recommends) that Melchizedek's RLUIPA claim does not challenge the sort of "fundamental defect" required under *Hill*. Dkt. No. 12 at 6–8, Dkt. No. 18 at 2–4, Dkt. No. 20 at 4–9. This is so, according to the State, because his "nonconstitutional" RLUIPA claim "does not contest his convictions or sentence" and seeks only restoration of "approximately one month of lost earned release time" for a release date not scheduled until 2059. Dkt. No. 12 at 7; *see also* Dkt. No. 20 at 6–7. Further, the State observes that Melchizedek does not claim any "procedural omission" in his state court personal restraint petition proceedings and argues that he could have pursued his claim under RLUIPA's private cause of action. Dkt. No. 12 at 6–7.

The Court disagrees. Beginning with the State's procedural arguments, a Section 2254 petitioner is not barred from seeking federal habeas review simply because he has litigated his claim in a procedurally adequate state court proceeding. Indeed, under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), exhausting state remedies—including available postconviction review—is a *prerequisite* to seeking federal habeas review. 28 U.S.C. § 2254(b)(1)(A); *Walden v. Shinn*, 990 F.3d 1183, 1197 (9th Cir. 2021) (failure to raise argument in postconviction review proceeding barred federal habeas review). And, as discussed below, deference to the state court's determination is applied through AEDPA's substantive requirements, which strictly limit a federal court's ability to revisit the merits of a federal claim already adjudicated by the state court. *See* § 2254(d). The state court's prior adjudication of a claim does not categorically bar federal habeas review.

As for the State's contention that Melchizedek could have brought his claim via a non-habeas RLUIPA action, the Court agrees with the R&R that *Heck v. Humphrey*, 512 U.S. 477 (1994), would foreclose that route because Melchizedek seeks relief that would shorten the duration of his detention. Dkt. No. 20 at 8–9. The Court adopts the R&R's analysis in this respect.

That said, the Court does not agree that *Hill* forecloses relief. In arguing otherwise, the State relies on cases—including *Hill* itself—in which prisoners challenged their detention based on procedural violations that they claimed may have affected the fact or duration of their confinement. *See Hill*, 368 U.S. at 428 (challenge to trial judge's failure to permit defendant to speak on his behalf before sentencing); *United States v. Addonizio*, 442 U.S. 178, 186 (1979) (claim that sentencing judge's assumptions about likely timing of parole were frustrated by subsequent Parole Commission policy change); *Hitchcock v. United States*, 580 F.2d 964, 966 (9th Cir. 1978) (claim that inmate's appearance before a magistrate after arrest was unnecessarily delayed and petitioner's return to state custody after execution of a writ violated the Interstate Agreement on Detainers Act). Here, Melchizedek asserts a violation of substantive federal law: namely, that the State sanctioned him for the conduct—refusing a work assignment out of step with his religious beliefs—that federal law places beyond the power of the State to sanction.

The Supreme Court's decision in *Davis v. United States*, 417 U.S. 333, makes clear that such a claim is cognizable in habeas under the *Hill* test. In that case, Joseph Davis was convicted of dodging the Vietnam War draft after his local draft board accelerated his induction and then declared him delinquent under regulations the Supreme Court later held "were without legislative sanction." 417 U.S. at 334–338 (citing *Gutknecht v. United States*, 396 U.S. 295, 306–07 (1970)). Davis brought an action under 28 U.S.C. § 2255, which "afford[s] federal prisoners a remedy identical in scope to federal habeas corpus." *Id.* at 340–41, 343. His petition argued that the Supreme Court's decision invalidating the draft board regulations and a subsequent Ninth Circuit

case interpreting that decision required that his conviction be set aside. *Id.* at 338–41. Observing that Davis's statutory claim, if valid, would mean that his "conviction and punishment [were] for an act that the law does not make criminal[,]" the Supreme Court found "no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'present(s) exceptional circumstances' that justify collateral relief" under *Hill*. *Id.* at 346–47 (quoting *Hill*, 368 U.S. at 428). Accordingly, Davis's claim was cognizable under Section 2255. *Id.* at 347.

Thus, under *Davis,* federal habeas is available to challenge a conviction and sentence that is unlawful under federal substantive law. *See Addonizio*, 442 U.S. at 186–87 (contrasting the substantive violation alleged in *Davis*, which "affect[ed] the lawfulness of the judgment itself[,]" with a change in Parole Commission policies, which "affected the *way in which* the court's judgment and sentence would be performed" (emphasis added)); *see also Jones v. Hendrix*, 599 U.S. 465, 486 (2023) (describing *Davis* as holding that "a substantive error of statutory law" may be "cognizable ground for a collateral attack on a federal court's criminal judgment"); *Alaimalo v. United States*, 645 F.3d 1042, 1050 (9th Cir. 2011) (challenge to drug importation conviction based on Circuit caselaw interpreting statute of conviction was cognizable in habeas under *Davis*). The State cites no authority, and the Court is aware of none, suggesting this principle does not extend to challenges to disciplinary proceedings that result in the loss of good conduct or earned release time. To the contrary, federal courts regularly hear habeas claims challenging such proceedings. *See Magoon v. Figueroa*, No. 95-40597, 1995 WL 696795, at *1 (5th Cir. October 18, 1995) (claim challenging loss of good time credits over inmate's refusal "to turn out for his work assignment without a legitimate reason" was cognizable in habeas); *Leinheiser v. Pilier*, No. 21-CV-1191 (GBD) (VF), 2024 WL 5470000, at *5 (S.D.N.Y. Jan. 16, 2024) (same as to claim challenging loss of good time credits over inmate's possession of a hazardous tool and entry into unauthorized area), *R&R adopted*, No. 21-CV-1191 (GBD) (VF), 2025 WL 845944 (S.D.N.Y. Mar. 18, 2025).

*Davis*'s principle applies here: Melchizedek's claim, if valid, would mean that the State sanctioned him for conduct that RLUIPA prohibited the State from punishing. The State emphasizes that his loss of good conduct time and earned release time are minor compared to his overall sentence. Dkt. No. 12 at 7. But the sanction nonetheless prolongs his period of confinement. And habeas relief is available even where success would "not reduce the length of [the petitioner's] confinement" at all but would "remove[] the possibility" of being subjected to other "adverse collateral consequences." *Alaimalo*, 645 F.3d at 1050 (citing *Ball v. United States*, 470 U.S. 856, 864–65 (1985)). Indeed, an inmate may generally *only* challenge the loss of good time credits as a result of prison disciplinary proceedings through a habeas corpus petition. *See, e.g.*, *Edwards v. Balisok*, 520 U.S. 641, 646–48 (1997) (§ 1983 damages claim unavailable where prison disciplinary proceeding results in loss of good time credits); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (habeas corpus is the exclusive remedy when a state prisoner seeks "a speedier release from … imprisonment").

Moreover, Melchizedek is likely to continue accruing sanctions that will extend his release date if he continues to refuse work assignments. In the meantime, Melchizedek has been—and presumably will continue to be—subjected to significant other penalties, including losing access to packages and the use of the prison's dayroom, gym, and yard. All this belies the Government's contention that Melchizedek's claims are "not … sufficiently serious to warrant habeas review." Dkt. No. 12 at 7.

Nor is the State correct that habeas relief is unavailable simply because Melchizedek asserts a "nonconstitutional" claim. Dkt. No. 12 at 7. To the contrary, *Davis* rejected the notion that "any line could be drawn on the basis of whether [a habeas] claim had its source in the Constitution or in the 'laws of the United States.'" 417 U.S. at 346. And to the extent that the State suggests Melchizedek's claim is less "serious" because it its statutory (Dkt. No. 12 at 7), RLUIPA, if

anything, "aim[s] to ensure '*greater* protection for religious exercise than is available under the First Amendment.'" *Ramirez v. Collier*, 595 U.S. 411, 424 (2022) (emphasis added) (quoting *Holt v. Hobbs*, 574 U.S. 352, 357 (2015)).

Accordingly, the Court concludes that Melchizedek's RLUIPA claim asserts the sort of "fundamental defect" and "exceptional circumstances" that warrant the exercise of habeas jurisdiction under *Hill*. 368 U.S. at 428. The Court therefore declines to adopt the R&R in this regard and instead considers the merits of Melchizedek's petition, which the R&R did not reach.

**B. The State Court Unreasonably Applied Clear Supreme Court Precedent.**

Because the Washington Court of Appeals already ruled on Melchizedek's RLUIPA claim in dismissing his personal restraint petition, his current petition faces a further hurdle under AEDPA. That statute prohibits federal courts from granting an "application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court … with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim … resulted in a decision that was[,]" as relevant here, "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). For purposes of Section 2254(d)(1), "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012)).

"[U]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Moses v. Payne*, 555 F.3d 742, 751 (9th Cir. 2009) (alterations in original) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). An "unreasonable application" of Supreme Court precedent "must be

'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White*, 572 U.S. at 419 (quoting *Andrade*, 538 U.S. at 75–76). This high standard "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)).

Still, "a state court decision is not reasonable under AEDPA simply because another judge—or even several other judges—arrived at the same incorrect conclusion." *Wilkinson v. Gingrich*, 806 F.3d 511, 519 (9th Cir. 2015) (citing *Williams v. Taylor*, 529 U.S. 362, 409–10 (2000)). The crux is simply "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409.

Here, Melchizedek has shown that the Court of Appeals unreasonably applied clear Supreme Court precedent in denying his personal restraint petition. While the state court articulated the correct standard for evaluating RLUIPA claims, its application of that standard cannot be squared with the Supreme Court's RLUIPA cases. AEDPA therefore does not bar federal habeas review, and Melchizedek is entitled to relief.

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). The petitioner "bears the initial burden of proving that a prison policy 'implicates his religious exercise.'" *Ramirez*, 595 U.S. at 425 (quoting *Holt*, 574 U.S. at 360). To carry this burden, the petitioner must show that the "requested accommodation" is "sincerely based on a

religious belief" and that the prison policy's burden on the prisoner's religious exercise is substantial. *Id.* (quoting *Holt*, 574 U.S. at 360). Upon making this showing, "the burden flips and the government must 'demonstrate[ ] that imposition of the burden on that person' is the least restrictive means of furthering a compelling governmental interest." *Id.* (alteration in original) (quoting § 2000cc-1(a)).

1. <u>Disciplining Melchizedek substantially burdened his religious exercise.</u>

Starting with Melchizedek's burden, there is no dispute that his request to be exempt from accepting the groundskeeper position was grounded in a sincerely held religious belief and that DOC substantially burdened his religious exercise by refusing the request and disciplining him. The State has never contested this—either in state court or now—and the Court of Appeals so held. *See* Dkt. No. 13-1 at 357–58 (state court opinion); *id.* at 81–101 (State's personal restraint petition brief); Dkt. No. 12 (State's federal habeas response brief).

As the Court of Appeals observed, Melchizedek's name change, which he finalized in 2017, and his directorship of The Essene Assembly of Yahvah, both support the sincerity of his religious belief. Dkt. No. 13-1 at 357–58. Melchizedek also points to passages from the Community Rule he interprets as the basis for his particular belief requiring him to separate himself from non-Essenes in his work. Dkt. No. 6-1 at 31–34, 40–43. And he notes that he has declined to work for the DOC for the last seventeen years. *Id.* at 31. The State does not dispute that disciplining Melchizedek for not accepting the groundskeeper position substantially burdened his religious exercise. Accordingly, the burden shifts to the State to show that doing so was the least restrictive means of furthering a compelling governmental interest.

2. <u>The State failed to carry its burden under the compelling interest test.</u>

At this step, the Court of Appeals' analysis—both in defining the compelling state interest at play and scrutinizing the existence of alternative means for furthering that interest—conflicts with Supreme Court precedent in this area.

To begin, the Court of Appeals held that the State met its burden of establishing a compelling interest in "prison security" and "effective prison administration." Dkt. No. 13-1 at 358–60. While this Court agrees that prison security and effective administration are important principles, the Supreme Court has repeatedly rejected reliance on such "broadly formulated interest[s]" in the context of RLUIPA's "compelling interest" test. *Holt*, 574 U.S. at 362 (alteration omitted) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726 (2014)); *see also Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006) (describing compelling interest caselaw as "look[ing] beyond broadly formulated interests"); *Ramirez*, 595 U.S. at 427 ("Under RLUIPA, the government cannot discharge this burden by pointing to 'broadly formulated interests.'" (citation omitted)). For instance, the Supreme Court in *Holt* rejected a state's reliance on "prison safety and security" to deny a religious accommodation to a prisoner from a generally applicable grooming policy. 574 U.S. at 362–63. The Court explained that "RLUIPA … contemplates a more focused inquiry" that "requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law" to "the particular claimant whose sincere exercise of religion is being substantially burdened.'" *Id.* (citations omitted).

Contrary to *Holt* and other RLUIPA cases, the Court of Appeals improperly focused on the State's generic interest in having a prison work requirement, rather than "the asserted harm of granting [a] specific exemption[] to [the] particular religious claimant[]"—i.e., Melchizedek. *Holt*, 574 U.S. at 464 (quoting *Hobby Lobby*, 573 U.S. at 726–27). Thus, the state court framed the

inquiry as whether the DOC established "a compelling government interest that is furthered by [Wash. Admin. Code §] 137-25-030(557)" (Dkt. No. 13-1 at 358)—the work requirement writ large—rather than the State's "marginal interest in enforcing" that requirement in the "particular context" of Melchizedek's request for an exemption. *Holt*, 574 U.S. at 363 (quoting *Hobby Lobby*, 573 U.S. at 727); *see also O Centro*, 546 U.S. at 431. By defining the inquiry too generically, the Court of Appeals set its analysis off on the wrong foot.

The Court of Appeals then strayed again from Supreme Court caselaw in scrutinizing the State's claim that disciplining Melchizedek was the least restrictive means of furthering its broadly stated goals. This Court considers each of the state court's reasons for upholding Melchizedek's discipline in turn.

The Court of Appeals first held that "exempt[ing] Melchizedek from mandatory programming requirements and disciplinary regulations for refusal to work" would violate the First Amendment by "favoring religious adherents individually or collectively over nonadherents[.]" Dkt. No. 13-1 at 362. The Court of Appeals apparently believed that, under the Establishment Clause, the State could not constitutionally grant Melchizedek's exemption request without doing away with the work requirement for nonreligious adherents as well. *Id.* Accordingly, denying his request (and imposing sanctions) was the least restrictive means of furthering the compelling interests advanced by the prison work policy in general.

That reasoning directly conflicts with the Supreme Court's holding in *Cutter v. Wilkinson*, 544 U.S. 709 (2005), that RLUIPA's "heightened protection" for "religious exercise" is "a permissible legislative accommodation of religion that is *not* barred by the Establishment Clause." 544 U.S. at 714, 720 (emphasis added); *see also* 42 U.S.C. § 2000cc-1(a) (specifying that "rule[s] of general applicability" are subject to RLUIPA's accommodation requirements). Indeed, *Cutter* confirmed that "[r]eligious accommodations … need not 'come packaged with benefits to secular

entities.'" 544 U.S. at 724 (quoting *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 338 (1987)). A contrary rule, explained the Court, would improperly vitiate "all manner of religious accommodations[,]" including allowing military members to wear religious apparel while in uniform and permitting "prisoners to assemble for worship, but not for political rallies[.]" *Id.* *Cutter* thus rejected a rigid view of the Establishment Clause that would forbid religious exemptions to generally applicable rules in the service of strict neutrality. *Contra* Dkt. No. 13-1 at 362.

The Court of Appeals' analysis also cannot be squared with the Supreme Court's decisions post-*Cutter* requiring state prisons to grant exemptions from rules that would otherwise apply to nonadherent inmates. *See Ramirez*, 595 U.S. at 436–37 (holding inmate's execution without accommodation to allow religious touch and audible prayer in execution chamber would likely violate RLUIPA); *Holt*, 574 U.S. at 369–70 (prison's refusal to exempt Muslim petitioner from grooming policy to allow him to grow a ½-inch beard violated RLUIPA); *cf. also Dunn v. Smith*, 592 U.S. 1255 (2021) (denying application to vacate injunction barring execution under similar circumstances as *Ramirez*). Indeed, in *Ramirez*, the Supreme Court *encouraged* prisons to "specify reasonable rules on the time for prisoners to request religious accommodations" and "adopt streamlined procedures" for processing accommodation requests related to executions. 595 U.S. at 435–36. The Court of Appeals' view that granting a religious exemption from a generally applicable prison rule would violate the Establishment Clause conflicts with the Supreme Court's express approval of such exemptions in similar contexts.

The state court seemed to rest its decision, in part, on a perceived distinction between Melchizedek's request for "a religious *exemption* from" the work requirement (which, in the state court's view, would improperly "favor[] religious adherents") and "an *accommodation* to meet a specific religious practice" (which presumably might not). Dkt. No. 13-1 at 362 (emphasis added).

To the extent that the court required Melchizedek—rather than the State—to identify alternative means for achieving the State's objectives while accommodating his beliefs, "[t]hat gets [the burdens] backward." *Ramirez*, 595 U.S. at 432 ("Once a plaintiff has made out his initial case under RLUIPA, it is the government that must show its policy is the least restrictive means of furthering a compelling governmental interest." (citation modified)). In any event, *Cutter* recognized no relevant distinction between "accommodations" and "exemptions" and, to the contrary, described RLUIPA as a "legislative accommodation of religion" while citing caselaw rejecting Establishment Clause challenges to religious exemptions. *See* 544 U.S. at 720, 724 (discussing *Amos*, 483 at 329, which held that "a provision exempting 'religious organizations from Title VII's prohibition against discrimination in employment on the basis of religion'" did not violate the Establishment Clause). Accordingly, the Court of Appeals' first reason for upholding Melchizedek's sanction conflicts with Supreme Court precedent in this area.

The Court of Appeals also found that "exempt[ing] Melchizedek from accepting available work could jeopardize the effective functioning of the prison and its operations dependent on inmate labor because 'the refusal to work presents a threat to the orderly administration of the prison system.'" Dkt. No. 13-1 at 362 (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 194 n.4 (5th Cir. 1993)). It determined such an exemption "could" also "defeat the legislature's intent and purpose in creating the inmate work program and, moreover, threaten the order and safety of the prison by promoting idleness among inmates." *Id.*

In reaching these conclusions, the Court of Appeals "fail[ed] to engage in the sort of case-by-case analysis that" the Supreme Court has repeatedly emphasized "RLUIPA requires." *Ramirez*, 595 U.S. at 430 (citing *Holt*, 574 U.S. at 363); *see id.* at 435 ("[T]he resolution of RLUIPA claims in the prisoner context requires a case-specific consideration of the particular circumstances and claims."). Indeed, in Melchizedek's state court proceeding, the State submitted

no evidence regarding the harm of granting his specific exemption request. For instance, it presented no evidence indicating Melchizedek poses a particular risk to the safety of other inmates unless engaged in work. Nor did it present evidence indicating he refuses to participate in other programming, training, or educational activities. In fact, its brief to the Court of Appeals did not identify any reason specific to Melchizedek why the State could not advance its interests in "prison safety" and "effective administration" without denying Melchizedek's particular exemption request. *See* Dkt. No. 13-1 at 98–100.

Instead, the State argued that "there is legitimate concern that exempting Melchizedek from programing would require the exemption to be available to any incarcerated individual[.]" Dkt. No. 13-1 at 99. But the Supreme Court in *Holt* and other cases squarely rejected this argument—"[i]f I make an exception for you, I'll have to make one for everybody, so no exceptions." 574 U.S. at 368 (quoting *O Centro*, 546 U.S. at 436); *see also Sherbert v. Verner*, 374 U.S. 398, 407 (1963) (rejecting mere "possibility" that "unscrupulous claimants" will "fil[e] fraudulent claims … feigning religious objections" as a basis for refusing religious exemption to requirement that unemployment benefit applicants accept Saturday work). And, in any event, the State presented no evidence supporting its expressed fear of being inundated with religious exemption requests (sincere or not) to the mandatory work policy. "Such speculation is insufficient to satisfy" the State's burden under the compelling interest test.[3] *Ramirez*, 595 U.S. at 430 (quoting *Fulton v. City of Philadelphia*, 593 U.S. 522, 542 (2021)).

[3] The State's brief to the Court of Appeals relied, to a significant extent, on *Jenkins v. Vail*, No. CV-08-5075-CI, 2010 WL 3715154 (E.D. Wash. Aug. 4, 2010), *R&R adopted*, No. CV-08-5075-CI, 2010 WL 3719069 (E.D. Wash. Sept. 17, 2010), which rejected a RLUIPA claim brought by a Muslim inmate seeking exemption from both the prison work requirement and mandatory educational programming. 2010 WL 3715154, at *2, *6. The court in *Jenkins* found that, under the Establishment Clause, exempting the inmate from prison work and programming would require "exempt[ing] all offenders who profess their religion does not allow them to work or program"—a result the court found untenable. *Id.* at *8. *Jenkins* predates *Ramirez*, *Holt*, and *Hobby Lobby*; and its reasoning departs from the "case-by-case analysis" those decisions require. *See Ramirez*, 595 U.S. at 430; *Holt*, 574 U.S. at 368 (rejecting the exception-for-you-means-exception-for-everyone argument). In any event, the inmate in *Jenkins* sought an exemption not only from the work policy, but from educational programming requirements as well, which is not at issue here.

Considering that Melchizedek has not worked in the prison for the last seventeen years, the State's claim that requiring him to accept the groundskeeper position is essential to prison security or administration is unpersuasive. While "deference is due" to prison officials' judgment on issues of prison security (*Cutter*, 544 U.S. at 725 n.13), RLUIPA "does not permit such unquestioning deference." *Holt*, 574 U.S. at 364. This is particularly so where state law already permits medical exemptions from the work requirement (WASH. REV. CODE § 72.09.460(10)), and Melchizedek has not claimed his religion prevents him from participating in other programming, such as training or educational activities.[4] Although DOC apparently never explored the possibility of accommodating Melchizedek's religious belief, it is not clear such accommodation would have been impossible: Melchizedek conveyed during his disciplinary proceeding that his religion would permit him to accept a position in the chapel library. Dkt. No. 13-1 at 45. "[C]ourts must hold prisons to their statutory burden" and not "assume a plausible, less restrictive alternative would be ineffective." *Holt*, 574 U.S. at 369 (citation omitted). Here, the state court inadequately scrutinized the asserted lack of alternative avenues for furthering the State's interests.

In sum, no reasonable application of RLUIPA, as interpreted in *Holt*, *Ramirez*, *Cutter*, and the other precedents addressed above, could lead to the conclusion that the State carried its "exceptionally demanding" burden under the "least-restrictive-means" test. *Holt*, 574 U.S. at 364 (citation omitted). The Court therefore finds that the state court's decision unreasonably applied clearly established federal law as determined by the Supreme Court and that Melchizedek is

---

Thus, in *Jenkins*, the State had fewer options for advancing its interests in rehabilitation, order, security, and reducing idleness than it does here, where Melchizedek does not claim he cannot participate in all programming.

[4] Although Melchizedek's personal restraint petition stated generally that DOC's work policy and the underlying statutes violate RLUIPA (Dkt. No. 13-1 at 2–3), elsewhere it clarified that Melchizedek's challenge is to the requirement to participate in work programs "as applied to him" (*id.* at 59), and specifically the infraction imposed for his refusal to accept the groundskeeper position, which he claims substantially burdened his religious practice (*id.* at 52–54). This Court does not find that DOC's work requirement or the underlying statutes facially violate RLUIPA. Nor does it consider whether the State has a compelling interest that would justify requiring Melchizedek to participate in programming other than accepting a work assignment involving work for a government entity.

entitled to habeas relief. The Court will therefore order the State to restore any good conduct time and earned release time that Melchizedek lost as a result of the sanctions at issue in this case.[5]

## III. CONCLUSION

The Court declines to adopt the R&R, except to the extent stated above (Dkt. No. 20), and GRANTS Melchizedek's petition for a writ of habeas corpus (Dkt. No. 6). The State is ORDERED to reinstate any good conduct time and earned release time that Melchizedek lost as a result of the disciplinary sanctions at issue in this case. The State is further ORDERED to file a status report no later than September 25, 2026, indicating that it has complied with this Order.

Dated this 11th day of September, 2026.

Kymberly K. Evanson
United States District Judge

[5] Melchizedek's habeas petition could be liberally construed to request injunctive relief barring similar discipline in the future, as he requested in his state court proceeding. *See* Dkt. No. 6-1 at 28. However, because neither party has addressed the factors for a permanent injunction, *see eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), the Court will not reach this issue. The Court notes that Melchizedek could seek further relief in habeas or under 42 U.S.C. § 1983 if he continues to be disciplined for refusing work assignments that would violate his religious beliefs (unless justified by a compelling government interest). But because the Court has no reason to believe the State will not abide by the ruling in this Order, the Court does not find that Melchizedek is likely to continue facing irreparable harm as to warrant a permanent injunction aimed at future discipline at this time.